# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3939

_____

| | |
|---|---|
| Schoolhouse, Inc., | * |
| | * |
| Appellant, | * |
| | * |
| v. | *  Appeal from the United States |
| | *  District Court for the |
| Jeff Anderson; Margaret Richardson | *  District of Minnesota |
| d/b/a Market Solutions, | * |
| | * |
| Appellees. | * |

_____

Submitted: October 15, 2001

Filed: January 4, 2002

_____

Before WOLLMAN, Chief Judge, LAY and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

The parties to this lawsuit publish information about schools in and around Minneapolis and St. Paul, Minnesota. The plaintiff, Schoolhouse, Inc. (Schoolhouse), publishes its information in a magazine. The principal defendant, Jeff Anderson, posts his information on an internet website. Schoolhouse alleges that Anderson created his website by copying the selection and the arrangement of topics in

Schoolhouse's magazine. The district court[1] granted summary judgment in favor of Anderson, and Schoolhouse appeals. We affirm.

## I.  BACKGROUND

Schoolhouse publishes an annual magazine marketed to prospective home buyers in Minneapolis, St. Paul, and the surrounding area. Schoolhouse distributes its magazine through local real estate agents. In addition to articles, the magazine features tables of information on area public and private schools. This appeal involves the table of information on public schools in the 1996 edition of Schoolhouse's magazine.

Schoolhouse's table organizes and reports information by topic. School districts are listed alphabetically in a column at the left-hand side of the table. Topic headings are listed in a row across the top of the table. There are many topics in the Schoolhouse table. Some, such as "Bachelor," "Masters," and "Doctorate" describe the academic degrees attained by staff members. Others, such as "French," "Spanish," and "German," describe particular classes schools may offer. The substantive content of the table is information listed under these topics, for example, the number of staff members with particular degrees and whether a school offers particular courses.

Schoolhouse arranges its topics in various ways. Most broadly, Schoolhouse divides its topics into two categories, "Athletic" and "Characteristic," and places those categories in separate sub-tables. The seventeen "Athletic" topics list all the sports that local schools generally offer. The remaining "Characteristic" topics describe information about students, teachers, classes, school facilities, and school services. Within the Schoolhouse table, "Characteristic" topics are often grouped according to their general subject matter. For example, the topics "French," "Spanish," and "German," along with other course titles, are arranged in the group "Classes Offered."

---

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Jeff Anderson, a Twin Cities real estate agent, also organizes and lists information on local schools. Anderson compiles and publishes his information on an internet website, which he designed with the help of Margaret Richardson. Unlike Schoolhouse, Anderson does not publish information on all area schools in a single table. Instead, Anderson's website provides a list of school districts with links to information on each school. When an internet user clicks on a school district, the website takes the user to a page of information Anderson has compiled exclusively on that district.

The pages of information on Anderson's website do not consist solely of tables. Each page does include a table of information on "School Statistics" – statistics on school population, accreditation, pupil/staff ratio, and pupil/computer ratio at various schools in the district. On the rest of each page, however, topics are broken down into groups and each group of topics is displayed in a separate row. For example, there is a row of information on "Certified Staff," a row on "Classes Offered," and a row of "Miscellaneous" information. "Athletic" information is listed in this same format on the same page as non-athletic data.

Schoolhouse's table and Anderson's website cover many of the same topics. For example, both provide information on the population of school districts and schools, on the availability of services like busing and hot lunch, on staff credentials and certification, on classes offered, and on student test scores. Many of the topics within these general groups – such as whether a school offers a particular foreign language – appear both in the Schoolhouse table and on Anderson's website. Viewed in the light most favorable to Schoolhouse, the 64 topics covered by Anderson's website include 56 of the 76 topics listed in the Schoolhouse table.

Schoolhouse filed this lawsuit alleging copyright infringement, unfair business practices, and unfair competition. The district court granted summary judgment to Anderson on Schoolhouse's copyright infringement claim and dismissed Schoolhouse's state-law claims without prejudice. Schoolhouse now appeals the grant of summary judgment on its copyright infringement claim, arguing that there

was a genuine issue of material fact as to whether the two works are substantially similar.

## II.    DISCUSSION

We review a district court's grant of summary judgment de novo, using the same standards applied by the district court. Iowa Coal Min. Co. v. Monroe County, Iowa, 257 F.3d 846, 852 (8th Cir. 2001). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. In a copyright infringement case, where both works are in the record, a trial court has sufficient evidence to enter summary judgment. Nelson v. PRN Prods., Inc., 873 F.2d 1141, 1143 (8th Cir. 1989).

Schoolhouse's table on public schools is a factual compilation. Under the law of copyright, a compilation is a work formed by selecting or arranging preexisting data "in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Because copyright law protects only expression, and not ideas or facts, copyright protection for a factual compilation is "thin." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349 (1991). As applied to a factual compilation, copyright law protects an author's original selection and arrangement of facts, but the facts and ideas within the compilation are free for the taking. Id. at 348-49.

Anderson concedes that Schoolhouse has a valid copyright in its table. To establish a violation of its copyright, Schoolhouse must prove that Anderson had access to its table and that there is substantial similarity, both in ideas and expression, between the original elements of its table and Anderson's website. See Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987). Because Anderson concedes that he had access to Schoolhouse's table, the only issue in dispute is whether Anderson's website bears substantial similarity to the original selection and arrangement of topics in Schoolhouse's table.

-4-

In Hartman we adopted a two-step analysis for determining whether works are substantially similar.  Pursuant to this analysis, we must first analyze the similarity of ideas extrinsically, focusing on any objective similarities in the details of the works.  Id.  If the ideas behind the works are substantially similar, we must then evaluate similarity of expression intrinsically, according to the response of the ordinary, reasonable person.  Id.  When applying the second step of the analysis, summary judgment is proper if ordinary, reasonable minds could not find the works substantially similar.  Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 945-46 (8th Cir. 1992).

The district court found that the works reflected in Schoolhouse's table and in Anderson's website "contain some objective similarities in detail," but the works are "so dissimilar in expression that reasonable minds could not differ as to the absence of substantial similarity."  Like the district court, we base our decision on the response that an ordinary, reasonable person would have to the two works.

Because copyright law affords only "thin" protection to factual compilations, a competitor may take "the bulk of the factual material from a preexisting compilation" without infringing the author's copyright.  BellSouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc., 999 F.2d 1436, 1445 (11th Cir. 1993) (en banc), (citing Feist, 499 U.S. at 348-50).  To paraphrase one commentator, when it comes to factual compilations, after Feist, it takes virtually "extensive verbatim copying" to constitute infringement.  See TransWestern Publ'g Co. v. Multimedia Mktg. Assocs., Inc., 133 F.3d 773, 776-77 (10th Cir. 1998) (citing Jane C. Ginsburg, No "Sweat"? Copyright and Other Protection of Works of Information After Feist v. Rural Telephone, 92 Colum. L. Rev. 338, 349 (1992)).  As explained in Feist, this "result is neither unfair nor unfortunate.  It is the means by which copyright advances the progress of science and art."  Feist, 499 U.S. at 350.

In supporting its infringement claim, Schoolhouse stresses that 56 of the 64 topics on Anderson's website are also in Schoolhouse's table.  Although this type of comparison can be helpful, see Kregos v. Associated Press, 3 F.3d 656, 663-64 (2d

Cir. 1993), Schoolhouse places too much reliance on it. The ratio used by Schoolhouse suggests that Anderson obtained many of his topics from Schoolhouse's table, but it does not establish that Anderson's website is substantially similar to Schoolhouse's table "as a whole work." A better measure of this relationship is the ratio of the topics Anderson and Schoolhouse have in common to the total number of topics in the Schoolhouse table.

The case law supports using such a comparison. In <u>Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.</u>, 945 F.2d 509 (2d Cir. 1991), the Second Circuit addressed a copyright dispute involving two competing directories of Chinese-American businesses, the Key Directory and the Galore Directory. After a bench trial, the district court found that the Galore Directory infringed on the Key Directory's copyright. The district court's decision focused on the fact that 1500 of the 2000 listings in the Galore Directory were identical to listings in the Key Directory. <u>Id.</u> at 515. Reversing, the Second Circuit looked at the ratios differently, pointing out that the 1500 identical listings made up only 17% of the 9000 listings in the larger Key Directory. Id.

Focusing on how much of Schoolhouse's table has actually been incorporated into Anderson's website weakens Schoolhouse's infringement claim. Like the plaintiff in <u>Key Publications</u>, Schoolhouse argues that 56 of the 64 topics in Anderson's table, or about 87%, are the same as topics in the Schoolhouse table. Schoolhouse's table, however, contains more topics than Anderson's. When the number of identical topics is compared against all the topics in Schoolhouse's table, the ratio of identical topics drops to 56 out of 76, or approximately 74%. The tables are thus not as similar as the ratio used by Schoolhouse suggests.

A closer look at the topics themselves reveals that the two works are even less similar. Similarity in expression cannot be used to show copyright infringement when there is only one way or only a few ways of expressing an idea. <u>Toro Co. v. R & R Prods. Co.</u>, 787 F.2d 1208, 1212 (8th Cir. 1986). Numerous courts have cited this principle in denying copyright infringement claims "to prevent an author from

monopolizing an idea merely by copyrighting a few expressions of it." Id. See, e.g., Kregos, 3 F.3d at 664; BellSouth, 999 F.2d at 1442; Matthew Bender & Co. v. Kluwer Law Book Publishers, Inc., 672 F. Supp. 107, 109-10 (S.D.N.Y. 1987).

The Second Circuit's decision in Key Publications provides a good example of this principle as well. After comparing the coverage of the Key Directory and the Galore Directory, the Second Circuit addressed the reasons for the area of overlap between the two directories. "There are," it wrote, "a finite number of businesses that are of special interest to a sizeable segment of the New York Chinese-American community, and some substantial overlap among classified business directories compiled for that community is inevitable." Key Publications, 945 F.2d at 516. On this basis, the court excused the remaining similarity between the two yellow-page directories. Id.

A great deal of the overlap between Schoolhouse's table and Anderson's website is the result of Schoolhouse's comprehensive approach to reporting data. For example, the topics in the "Athletic" section of Schoolhouse's 1996 public schools table comprise all of the seventeen sports that are generally available in local high schools. For purposes of compiling such a table, there is nothing original about simply selecting all of the generally available sports. Similarly, nearly all of the topics selected by Schoolhouse, such as school district population, number of pupils, pupil/staff ratio, and particular classes offered, convey facts that parents obviously consider important in selecting a school for their children. When such topics are removed from the comparison, it is clear that the selection of topics in Anderson's website is not substantially similar to the selection of topics in Schoolhouse's table.

The arrangement of the topics in the two works is not substantially similar either. As the district court observed, the respective formats of Anderson's website and Schoolhouse's table are quite dissimilar. It is true that Anderson and Schoolhouse group many of their topics under similar headings, such as "Classes Offered" and "Certified Staff." Such headings, however, are obvious labels for these categories and therefore lack originality. See BellSouth, 999 F.2d at 1444 (yellow-

page labels such as "Attorneys" and "Banks" were not original). Nor does copyright law protect Schoolhouse's grouping of individual topics. There is nothing original about placing "French," "Spanish," and "German" within the category of "Classes Offered," or the other decisions Schoolhouse made in grouping topics together.

## III.  CONCLUSION

Although there are some objective similarities in the ideas expressed by Schoolhouse's table and Anderson's website, the two works express their ideas so differently that ordinary, reasonable minds could not find them substantially similar. The selection and the arrangement of facts by Schoolhouse in its magazine table are, as a matter of law, not substantially similar to the selection and the arrangement of facts on Anderson's internet website. Accordingly, we affirm the judgment of the district court. In addition, we deny Anderson's request that we sanction Schoolhouse for allegedly filing a frivolous motion to strike Anderson's brief.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.